IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | MEMORANDUM DECISION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20100322-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (February 24, 2012) |
| Brandon Michael Samples, | ) | |
| | ) | 2012 UT App 52 |
| Defendant and Appellant. | ) | |

-----

Fourth District, Provo Department, 091402541
The Honorable Claudia Laycock

Attorneys:     Margaret P. Lindsay and Douglas J. Thompson, Provo, for Appellant
               Mark L. Shurtleff and Kenneth A. Bronston, Salt Lake City, for Appellee

-----

Before Judges McHugh, Orme, and Roth.

McHUGH, Presiding Judge:

¶1     Brandon Michael Samples appeals his conviction of theft by receiving stolen property, a second degree felony.  *See* Utah Code Ann. § 76-6-408 (Supp. 2011).[1]  We affirm.

¶2     Around 6:00 a.m. on August 14, 2009, David Thomas noticed that his teal blue Toyota Avalon (the Avalon) was missing from the driveway of his home in West Valley

---

1.  Because the material provisions of the statute have not changed, we cite the current version of the Utah Code Annotated for the convenience of the reader.

City where he had parked it the night before at around 9:30 p.m.[2] Thomas called 911 and reported the car stolen. Thomas testified that his fourteen-year-old daughter Jennifer's gym card was in the Avalon when it was stolen.

¶3    Earlier that same morning, a security officer at American Fork Hospital (the Hospital) informed the American Fork Police Department that there was a suspicious vehicle in the parking lot. A police officer arrived at the Hospital minutes after he received a call from dispatch at 5:55 a.m. regarding the suspicious vehicle. At the Hospital, the officer found a "greenish/bluish" Toyota Avalon that matched the description given to him by dispatch. Samples was in the driver's seat and another unidentified individual was in the passenger's seat. When the officer questioned him, Samples explained that he and his passenger were using the parking lot as a place to sleep. The officer reviewed Samples's identification and then checked the vehicle's registration information. The registration revealed that the car was owned by David and Camille Thomas. Because Samples's identification and the car's registration did not match, the officer asked Samples to identify the owner of the car. Samples responded that Jennifer Thomas owned the car. Because Samples's response "matched" the vehicle's registration and Samples had no outstanding warrants, the officer simply directed Samples to leave the parking lot. When, shortly afterwards, dispatch informed the officer that the Avalon had been reported stolen, Samples and the Avalon were gone.

¶4    On August 27, 2009, Samples was charged by information with theft by receiving stolen property under Utah Code § 76-6-408. Several months later on December 23, 2009, the Avalon was recovered at an apartment complex in Price, Utah, located in Carbon County. The radio had been ripped out of the dashboard, and the compact disc changer had been removed from the trunk. Samples lived in the same county where the Avalon was found, in the city of Wellington, "a few miles [from] Price."

---

2. Because this case comes to this court after a jury trial, we view the "facts in a light most favorable to the jury's verdict" and "present conflicting evidence only as necessary to understand [the] issue[] raised on appeal." *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346.

¶5    At trial, Samples testified that the evening before Thomas reported the Avalon stolen, Samples was staying at his friend Felice Montoya's apartment in Salt Lake City. As the evening progressed, Montoya and Samples went to a party near 1100 West and California Avenue, which Samples described as being in "Glendale or downtown." At the party, Samples chatted with Chris Anderson, whom he had never met before. When Montoya left the party, abandoning Samples without transportation, Anderson offered to give Samples a ride home. However, Anderson fell off the porch, hurt his back, and asked Samples to drive him to the hospital.

¶6    Samples further testified that the two left the party around 3:30 a.m., with Samples driving the Avalon; that Anderson told Samples that the Avalon belonged to Anderson's aunt; and that Anderson requested that Samples take him to the American Fork Hospital rather than one closer to the party and Samples complied. According to Samples, when they arrived at the Hospital, Anderson went inside and Samples fell asleep in the car. Sometime while he slept, Anderson returned without waking Samples. Shortly thereafter, Samples was awakened by the officer. Samples reported that he told the Officer that the Avalon was Anderson's "Aunt Jennifer Thomas's car." Samples testified that after the officer left, he and Anderson went to Montoya's apartment in Salt Lake City and picked up some of Samples's personal belongings, and then Anderson drove to Samples's mother's apartment in Wellington where he left Samples. After Anderson drove away, Samples claims that he saw him once at an acquaintance's home in Price two days later but never since that time.[3]

¶7    The jury convicted Samples of theft by receiving stolen property under Utah Code section 76-6-408. Samples did not challenge the sufficiency of the evidence in the trial court, either before or after the verdict. Samples now appeals on the ground that the evidence was insufficient to support the jury's verdict because it could not support a finding that Samples knew the Avalon was stolen beyond a reasonable doubt.

¶8    Samples asks this court to review his claim under the plain error doctrine. *See State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 (noting that generally unpreserved issues can only be raised if the defendant shows "exceptional circumstances" or "plain error"). To establish plain error, Samples must show "(i) an error exists; (ii) the error should

---

3. In addition to Samples's testimony, David Thomas, and the officer also testified at Samples's trial. Neither Anderson nor Montoya were present, and they did not testify.

have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome." *State v. Ross*, 2007 UT 89, ¶ 17, 174 P.3d 628 (internal quotation marks omitted).

¶9     In reviewing a claim of insufficient evidence, our analysis does not consider whether "we believe that the evidence at trial established guilt beyond a reasonable doubt." *Holgate*, 2000 UT 74, ¶ 18.  Instead, we "view[] the evidence and all inferences drawn therefrom in a light most favorable to the jury's verdict." *Id.*  We will only conclude that the evidence was insufficient if it "is sufficiently inconclusive or inherently improbable such that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime for which he or she was convicted." *Id.* (internal quotation marks omitted).

¶10     Even if the evidence is insufficient, the error of submitting the case to the jury is not plain unless the insufficiency was "obvious and fundamental." *Id.*  Because Utah Code section 77-17-3 requires the trial court to discharge a defendant when an evidentiary defect is "apparent[,] [i]t necessarily follows that the trial court plainly errs if it submits the case to the jury . . . when the insufficiency of the evidence is apparent to the court." *See id.* ¶ 17 (internal quotation marks omitted); *see also* Utah Code Ann. § 77-17-3 (2008) ("When it appears to the court that there is not sufficient evidence to put a defendant to his defense, it shall forthwith order him discharged.").  For instance, it is plain error for the trial court to submit a case to the jury where "the State presents *no* evidence to support an essential element of a criminal charge." *Holgate*, 2000 UT 74, ¶ 17.

¶11     In this case, to convict Samples of the crime of theft by receiving stolen property, the State needed to prove three elements:  first, that Samples "receive[d], retain[ed], or dispose[d] of the property of another"; second, that he did so "knowing that it ha[d] been stolen, or believing that it probably ha[d] been stolen"; and, third, that he did so with the "inten[t] to deprive the owner of it." *See* Utah Code Ann. § 76-6-408(1) (Supp. 2011).  Of these elements, Samples only challenges the sufficiency of the evidence regarding his knowledge that the Avalon had been stolen.

¶12     "Knowledge or belief of the stolen character of goods is seldom directly proved and is usually inferred from the facts and circumstances in evidence." *State v. Davis*, 965 P.2d 525, 536 (Utah Ct. App. 1998) (internal quotation marks omitted).  When it is

established by circumstantial evidence, we must determine, first, whether the State presented "any evidence" with respect to knowledge, and, second, "whether the inferences that can be drawn from that evidence have a basis in logic and reasonable human experience sufficient to prove" that knowledge. *Holgate*, 2000 UT 74, ¶ 21 (internal quotation marks omitted). Even if an alternate hypothesis exists to explain the circumstantial evidence, this "does not necessarily prevent the jury from concluding that [the] defendant is guilty beyond a reasonable doubt" because it is "within the province of the jury to judge the credibility of the testimony, assign weight to the evidence, and reject these alternate hypotheses." *See State v. Lyman*, 966 P.2d 278, 281-82 (Utah Ct. App. 1998) (internal quotation marks omitted); *see also State v. Workman*, 852 P.2d 981, 987 (Utah 1993) ("A jury may choose which, among several reasonable inferences, to believe.").

¶13    In reaching a verdict, the jury was "free to weigh the conflicting evidence presented and to draw its own conclusions." *State v. Pierce*, 722 P.2d 780, 782 (Utah 1986). The jury could have inferred that Samples's presence in the driver's seat of the Avalon in American Fork, not long after it was stolen from West Valley City, combined with his knowledge of the name on the gym card, indicated that Samples was familiar with the contents of the car, despite his claim that he had only been in it for a brief time during which he was driving or sleeping. The jury could have also inferred that Samples told the Officer that the Avalon belonged to Jennifer Thomas, to conceal that fact, of which he was aware, that the car had been recently stolen.

¶14    Because this case comes before us on plain error review, however, we need not decide whether the evidence was "sufficiently inconclusive or inherently improbable such that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime for which he . . . was convicted." *See Holgate*, 2000 UT 74, ¶ 18, 10 P.3d 346 (internal quotation marks omitted). Rather, we need only decide whether the alleged insufficiency of the evidence was such that it was an "obvious and fundamental" error to submit the case to the jury. *See id*. ¶ 17. While acknowledging that the evidence of Samples's knowledge that the Avalon was stolen is thin, we cannot conclude that any "evidentiary insufficiency [was] so obvious and fundamental that it would be plain error for the trial court not to discharge the defendant." *See id*. Thus,

because any presumed error was not plain and the issue was not preserved, we need not consider it further.

¶15    Affirmed.

_____
Carolyn B. McHugh,
Presiding Judge

-----

¶16    WE CONCUR:

_____
Gregory K. Orme, Judge

_____
Stephen L. Roth, Judge