# Matter of Bepean Joseph DEANG, Respondent

*Decided June 16, 2017*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  An essential element of an aggravated felony receipt of stolen property offense under section 101(a)(43)(G) of the Act, 8 U.S.C. § 1101(a)(43)(G) (2012), is that an offender must receive property with the "knowledge or belief" that it has been stolen, and this element excludes a mens rea equivalent to a "reason to believe."

(2)  A conviction for receipt of a stolen motor vehicle under section 32-4-5 of the South Dakota Codified Laws categorically does not define an aggravated felony receipt of stolen property offense under section 101(a)(43)(G) of the Act because it is indivisible with respect to the necessary mens rea and only requires, at a minimum, that an offender have a "reason to believe" that the vehicle received was stolen.

FOR RESPONDENT:  Bradley Kyle Jenkins, Esquire, Silver Spring, Maryland

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Kenneth R. Knapp, Assistant Chief Counsel

BEFORE:  Board Panel:  PAULEY and CREPPY, Board Members.  Dissenting Opinion:  MALPHRUS, Board Member.

PAULEY, Board Member:

In a decision dated September 22, 2016, an Immigration Judge terminated removal proceedings after determining that the respondent was not removable under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (2012), as an alien convicted of an aggravated felony receipt of stolen property offense under section 101(a)(43)(G) of the Act, 8 U.S.C. § 1101(a)(43)(G) (2012). [1]  The Department of Homeland Security ("DHS") has appealed from that decision. The appeal will be dismissed.

---

[1]  Section 101(a)(43)(G) of the Act defines the term aggravated felony as "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year."

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Sudan and a lawful permanent resident of the United States.  On March 9, 2016, the respondent was convicted in South Dakota of receipt of a stolen motor vehicle, in violation of section 32-4-5 of the South Dakota Codified Laws and was sentenced to a term of imprisonment of 5 years.  Section 32-4-5 provides in pertinent part:

> Any person who . . . shall have in his possession any motor vehicle which he knows, or has reason to believe, has been stolen . . . shall be guilty of a Class 5 felony.

On appeal, the DHS contends that the Immigration Judge improperly relied on *Matter of Sierra*, 26 I&N Dec. 288 (BIA 2014), in support of her determination that the respondent's conviction was not a predicate for removal under section 101(a)(43)(G) of the Act.  The DHS argues that we limited the applicability of that decision to cases arising in the United States Court of Appeals for the Ninth Circuit.  *See id.* at 290 ("[W]e hold that under the law of the Ninth Circuit, the mental state of 'reason to believe' in section 205.273(1) [of the Nevada Revised Statutes] is insufficient for attempted possession of a stolen motor vehicle in violation of [Nevada law] to qualify categorically as an aggravated felony 'theft offense (including receipt of stolen property).'").  Whether receipt of a stolen motor vehicle under South Dakota law is an aggravated felony is a question of law that we review de novo.  8 C.F.R. § 1003.1(d)(3)(ii) (2017).

## II.  ANALYSIS

We agree that *Matter of Sierra* does not control the outcome of this case, which arises within the jurisdiction of the Eighth Circuit.  Indeed, in *Matter of Sierra* we expressly "reserve[d] the question of what Congress meant by the term 'receipt of stolen property' in section 101(a)(43)(G) of the Act for a future case where circuit law does not dictate that such an offense requires a showing that the actor had an intent to deprive the owner of his property." *Matter of Sierra*, 26 I&N Dec. at 292 n.1.  We are unaware of any cases from the Eighth Circuit addressing this specific question.

However, as we explain below, we are not persuaded that the Immigration Judge's decision to terminate proceedings should be disturbed.  In this regard, we note that after *Matter of Sierra* was issued, the Fifth Circuit joined the Ninth Circuit in holding that an aggravated felony receipt of stolen property offense requires that an offender have an intent to deprive the owner of the rights and benefits of ownership of the property.  *United States v. Sanchez-Rodriguez*, 830 F.3d 168, 174 (5th Cir. 2016).  Further, we are unaware of any contrary Federal court authority.

We conclude that the Fifth and Ninth Circuits are correct in holding that a necessary element of a receipt of stolen property offense is an intent to deprive the owner of his or her property. We observe that this shared element is likely responsible for Congress' decision to group within section 101(a)(43)(G) the aggravated felonies of theft and receipt of stolen property, which otherwise contain several nonmatching features and constitute distinct and separate offenses. *See, e.g.*, *Matter of Alday-Dominguez*, 27 I&N Dec. 48, 50 (BIA 2017) (observing that "'receipt of stolen property' is not merely a subset of 'theft' as that term is used in section 101(a)(43)(G) of the Act, because each can be considered to be a distinct and separate offense" (quoting *Matter of Cardiel*, 25 I&N Dec. 12, 14 (BIA 2009))).

We cannot infer that a violator who received property with a "reason to believe" that the property was stolen (or a similar mens rea) *intended* to deprive the true owner of the rights and benefits of ownership. This is so because such a violator need not be actually aware of the stolen character of the item received in order to be convicted of the offense. Instead, the prosecution need only establish that he or she *should* have been aware of the fact that such property was stolen when considering the circumstances presented. Accordingly, since a necessary element of both generic theft and receipt of stolen property offenses is an intent to deprive the owner of the rights or benefits of the property taken or received, a receipt of stolen property offense committed with a mens rea of "reason to believe" (or a similar mental state) cannot fall within the generic definition of an aggravated felony receipt of stolen property offense under section 101(a)(43)(G) of the Act. *See Sanchez-Rodriguez*, 830 F.3d at 172–73 (concluding that a conviction under a Florida statute that merely requires proof that a violator trafficked in "property that he or she . . . *should know* was stolen" is not categorically one for an aggravated felony since "it does not require proof of the specific 'intent to deprive the owner of rights and benefits of ownership'" (emphasis added)).

An examination of Federal and State statutes in existence when Congress added "receipt of stolen property" to the Act bolsters our conclusion in this regard. The Act does not define the phrase "receipt of stolen property" in section 101(a)(43)(G), nor did Congress cross-reference a Federal statute in that provision. Therefore, to determine whether there is a general understanding as to the requisite mental state for an aggravated felony receipt of stolen property offense, we may rely, at least in part, on an examination of the Federal and State statutes that existed in 1994, when Congress enacted section 101(a)(43)(G) of the Act,[2] as well as other authoritative sources such

---

[2]  Congress added the phrase "receipt of stolen property" to section 101(a)(43) of the Act in section 222(a) of the Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, 108 Stat. 4305, 4321.

as the Model Penal Code that define this species of offense.  *See Matter of Cardiel*, 25 I&N Dec. at 17 (defining the phrase "receipt of stolen property" in section 101(a)(43)(G) of the Act "based on the 'generic, contemporary meaning' of the statutory words at the time the statute was enacted" (quoting *Taylor v. United States*, 495 U.S. 575, 598 (1990))).

In examining Federal and State statutes contemporaneous to the addition of "receipt of stolen property" offenses to section 101(a)(43) of the Act, we place particular importance on Federal law because we are interpreting a congressional enactment.  *See Matter of Alvarado*, 26 I&N Dec. 895, 900 (BIA 2016) (relying to a "significant degree" on the Federal perjury statute to determine the scope of aggravated felony perjury under section 101(a)(43)(S) of the Act); *Matter of M-W-*, 25 I&N Dec. 748, 751 (BIA 2012) (finding the Federal murder statute to be "a significant point of reference" in defining the meaning of aggravated felony murder in section 101(a)(43)(A) of the Act).  In this regard, we find it significant that in 1994 nearly a dozen separate Federal statutes proscribing the receipt of stolen property required the Government to prove that an offender had received the property, knowing it had been stolen.  *See* 18 U.S.C. §§ 641, 659, 662, 668(b)(2), 880, 1660, 1708, 2113(c), 2313(a), 2315, 2317 (1994); *see also United States v. Fields*, 466 F.2d 119, 120–21 (2d Cir. 1972).[3]  In 1994, 15 States also required proof that an offender had "knowingly"[4] received stolen property.[5]

---

[3]  The only exception was a seldom prosecuted statute relating to a particular type of dangerous property, namely, firearms.  *See* 18 U.S.C. § 922(j) (1994) ("It shall be unlawful for any person to receive . . . any stolen firearm or stolen ammunition . . . knowing *or having reasonable cause to believe* that [it] was stolen" (emphasis added)).

[4]  These jurisdictions required proof that the stolen property was either "knowingly" or "intentionally" received, or that a violator had received such property "knowing" that it had been stolen.  Cal. Penal Code § 496 (West 1994); Haw. Rev. Stat. Ann. § 708-830(7) (West 1994); Ind. Code Ann. § 35-43-4-2(b) (West 1994); Kan. Stat. Ann. § 21-3701(a)(4) (West 1994); Ky. Rev. Stat. Ann. § 514.110 (West 1994); Mass. Gen. Laws Ann. ch. 266, § 60 (West 1994); Mont. Code Ann. § 45-6-301(3) (West 1994); N.Y. Penal Law § 165.54 (McKinney 1994); N.D. Cent. Code Ann. § 12.1-23-02(3) (West 1994); 11 R.I. Gen. Laws Ann. § 11-41-2 (West 1994); Tenn. Code Ann. § 39-14-103 (West 1994); Tex. Penal Code Ann. § 31.03(b)(2) (West 1994); Va. Code Ann. § 18.2-108 (West 1994); Wash. Rev. Code Ann. § 9A.56.140(1) (West 1994); Wis. Stat. Ann. § 943.34(1) (West 1994).

[5]  Almost all circuits have adopted the concept that "'[k]nowingly' in criminal statutes is not limited to positive knowledge, but includes the state of mind of one who does not possess positive knowledge only because he consciously avoided it."  *United States v. Jewell*, 532 F.2d 697, 702 (9th Cir. 1976) (en banc); *see id.* at 700 ("The rule that wilful blindness is equivalent to knowledge is essential, and is found throughout the criminal law." (citation omitted)); *see also United States v. Heredia*, 483 F.3d 913, 918 (9th Cir.

Section 223.6(1) of the Model Penal Code defines the offense of "receiving stolen property," in pertinent part, as "purposely receiv[ing], retain[ing], or dispos[ing] of movable property of another knowing it has been stolen, *or believing that it has probably been stolen*." (Emphasis added.) In 1994, the general receipt of stolen property statutes in 14 States mirrored the language of the Model Penal Code.[6] We consider these jurisdictions to be in the same category as those that solely employed a "knowing" mental state, because both knowledge and belief require an awareness of the stolen nature of the property, with the difference only relating to the degree of certainty of such a belief. *See Matter of Bahta*, 22 I&N Dec. 1381, 1390 (BIA 2000) ("As expressed in the Model Penal Code, . . . the predominant modern view is that the term 'receiving stolen property' is now used in a generic sense to encompass . . . the knowing possession, retention, withholding, or concealing of property with *knowledge* that it has been stolen." (emphasis added)). As noted, a mental state of "reason to believe," by contrast, implies only that the offender *should* have been aware of the illicit nature of the received property based on the circumstances. *See Sanchez-Rodriguez*, 830 F.3d at 172–73.

An offender can violate section 32-4-5 of the South Dakota Codified Laws with one of two culpable mental states. First, a violator may know that a motor vehicle has been stolen. However, the statute also may be violated with a less culpable mens rea—namely, a "reason to believe" that the vehicle was stolen. The "reason to believe" standard was used in 1994 in one form or another in receipt of stolen property statutes in 21 jurisdictions.[7]

_____

2007) (acknowledging that almost all circuits follow the rule in *Jewell*). Thus, in contemplating "knowledge," we include the concept of "willful blindness."

[6] The statutes in these jurisdictions required that property be received "knowing" or "believing" that it had been stolen. Colo. Rev. Stat. Ann. § 18-4-410(1) (West 1994); Conn. Gen. Stat. Ann. § 53a-119(8) (West 1994); Del. Code Ann. tit. 11, § 851 (West 1994); Md. Code Ann., Crim. Law Art. 27, § 342(c)(1) (West 1994); Me. Rev. Stat. Ann. tit.17-a, § 359(1)(A) (1994); Mo. Ann. Stat. § 570.080(1) (West 1994); Neb. Rev. Stat. Ann. § 28-517 (West 1994); N.H. Rev. Stat. Ann. § 637:7 (1994); N.J. Stat. Ann. § 2C:20-7(a) (West 1994); N.M. Stat. Ann. § 30-16-11 (West 1994); 18 Pa. Stat. and Cons. Stat. Ann. § 3925(a) (West 1994); S.D. Codified Laws § 22-30A-7 (1994); Utah Code Ann. § 76-6-408(1) (West 1994); Vt. Stat. Ann. tit. 13, § 2561 (West 1994).

[7] *See* Ala. Code § 13A-8-16(a) (1994); Ariz. Rev. Stat. Ann. § 13-1802(A)(5) (1994); Ark. Code Ann. § 5-36-106(a)(2) (West 1994); D.C. Code Ann. § 22-3832 (West 1994); Fla. Stat. Ann. § 812.019 (West 1994); Ga. Code Ann. § 16-8-7(a) (West 1994); Idaho Code Ann. § 18-2403(4) (West 1994); 720 Ill. Comp. Stat. Ann. 5/16-1(a)(4) (West 1994); Iowa Code Ann. § 714.1(4) (West 1994); La. Stat. Ann. § 14:69(A) (1994); Mich. Comp. Laws Ann. § 750.535(1) (West 1994); Minn. Stat. Ann. § 609.53(1) (West 1994); Miss. Code Ann. § 97-17-70(1) (West 1994); N.C. Gen. Stat. Ann. § 14-72(a) (West 1994); Nev. Rev. Stat. Ann. § 205.275 (West 1994); Ohio Rev. Code Ann. § 2913.51(A) (West 1994);

We further note that in 1994 many jurisdictions broke down their receipt offenses into more specific statutes covering specific forms of property, such as motor vehicles and firearms, and/or individuals in certain occupations, such as pawnbrokers and junk dealers.[8] Upon review of the State statutes covering the receipt of stolen motor vehicles, we observe that several jurisdictions required proof that a violator had a "reason to believe" (or a similar mens rea) that a vehicle was stolen, even though a violator of the general receipt of stolen property statutes of these jurisdictions must have "knowingly" received such property. However, an almost equal number of jurisdictions required proof that a violator receive a vehicle "knowing" it had been stolen, even though the same violator could be convicted under the general receipt of stolen property statutes of these jurisdictions if he or she had a "reason to believe" (or a similar mens rea) that the property was stolen.[9] And four jurisdictions with separate statutes proscribing the receipt of stolen motor vehicles employed the same mens rea contained in the general receipt of stolen property statutes of those jurisdictions.[10] Under these circumstances, we do not find these statutes particularly useful in determining the mens rea requirements for an aggravated felony receipt of stolen property offense under the Act.

In sum, while the statutes of 21 jurisdictions, including the District of Columbia, and one Federal statute used the lesser mental state of "reason to believe" or something similar in criminalizing the receipt of stolen property in 1994, 29 State statutes, 11 Federal statutes, and the Model Penal Code used an elevated standard of "knowledge or belief" when section 101(a)(43)(G) was enacted.[11] This survey, while not dispositive in itself, lends substantial support to our conclusion that a statute that only requires

---

Okla. Stat. Ann. tit. 21, § 1713(A) (West 1994); Or. Rev. Stat. Ann. § 164.095(1) (West 1994); S.C. Code Ann. § 16-13-180 (1994); W. Va. Code Ann. § 61-3-18 (West 1994); Wyo. Stat. Ann. § 6-3-403(a) (West 1994).

[8] *See, e.g.*, Cal. Penal Code § 496a (relating to "dealer[s] in or collector[s] of junk, metals, or secondhand materials"); Ind. Code Ann. § 28-7-5-36 ("pawnbroker[s]"); Mich. Comp. Laws Ann. § 446.214 (same); Vt. Stat. Ann. tit. 13, § 2561 ("dealer[s] in property").

[9] *Compare* Colo. Rev. Stat. Ann. § 42-5-102(1) (providing that the offense of receipt or possession of a stolen motor vehicle requires proof of a lesser form of mens rea than knowledge that the property was stolen); Del. Code Ann. tit. 21, § 6704; Mass. Gen. Laws Ann. ch. 266, § 28; N.M. Stat. Ann. § 66-3-505; 31 R.I. Gen. Laws Ann. § 31-9-2; S.D. Codified Laws § 32-4-5; Va. Code Ann. § 18.2-109, *with* 625 Ill. Comp. Stat. Ann. 5/4-103 (stating that the offense of receipt or possession of a stolen motor vehicle requires proof of knowledge); N.C. Gen. Stat. Ann. § 20-108; Okla. Stat. Ann. tit. 47, § 4-103; S.C. Code Ann. § 16-21-80.

[10] *See* Idaho Code Ann. § 49-228; Ind. Code Ann. § 35-43-4-2.5(c); Nev. Rev. Stat. Ann. § 205.273(1)(b); W. Va. Code Ann. § 17A-8-5.

[11] One jurisdiction required proof that property be received while "reckless[ly] disregard[ing] that [it] was stolen." Alaska Stat. Ann. § 11-46-190 (West 1994).

proof that a violator had a "reason to believe" that the property received was stolen cannot qualify as an aggravated felony receipt of stolen property offense under section 101(a)(43)(G) of the Act.

We acknowledge that a substantial minority of jurisdictions utilize the lower "reason to believe" (or a similar) standard, as does the South Dakota statute at issue here. Thus, the "reason to believe" standard was not outside the mainstream in defining the offense of "receipt of stolen property" in 1994. However, pursuant to *Taylor*, 495 U.S. at 598, we conclude that the view embodied in the majority of jurisdictions, including all but one Federal statute, reflects the "generic, contemporary meaning" of the phrase "receipt of stolen property" when it was added to section 101(a)(43) of the Act. Indeed, we are unaware of any authority for the proposition that Congress should be deemed to have adopted, for purposes of defining an aggravated felony, a mens rea standard that falls below the mens rea embraced by the majority of State and Federal jurisdictions because a substantial *minority* of jurisdictions embraced it. We therefore hold that the mens rea of "knowledge or belief" is an essential element of an aggravated felony receipt of stolen property offense under section 101(a)(43)(G) of the Act, and this element excludes a mens rea equivalent to a "reason to believe."

Our approach is consistent with the Supreme Court's recent unanimous decision in *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562 (2017), where the Court relied on both the contemporaneous existence of Federal statutes proscribing sexual abuse of a minor that were limited to minors under 16 years of age and the fact that a majority of State jurisdictions likewise adopted 16 as the age of consent. Based on this survey of Federal and State law, the Court held that the generic definition of aggravated felony sexual abuse of a minor under section 101(a)(43)(A) of the Act "requires that the victim be younger than 16." *Id.* at 1568.

The Court's analysis undermines the assertions of the DHS and the dissent that we should interpret the generic definition of receipt of stolen property as encompassing all levels of scienter included in various State statutes when "receipt of stolen property" was added to the Act, rather than limit this definition to the level of scienter reflected in the majority of Federal and State statutes at that time. Further, we are unaware of any Supreme Court or Federal court of appeals decision that has held that a statute containing a "reason to believe" (or a similar) mens rea is sufficient to define *any* aggravated felony, much less one involving receipt of stolen property.

Finally, even if we remained in doubt as to the proper interpretation of section 101(a)(43)(G), the rule of lenity would obligate us to construe any ambiguity in favor of the respondent. *See, e.g.*, *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) (holding that any lingering ambiguities in the language of the

Act are to be resolved in an alien's favor); *Matter of Tiwari*, 19 I&N Dec. 875, 881 (BIA 1989).[12]

## III.  CONCLUSION

We conclude that the respondent's conviction for receipt of a stolen motor vehicle under section 32-4-5 of the South Dakota Codified Laws, which merely requires a violator to have a "reason to believe" that the vehicle received was stolen, categorically does not define an aggravated felony receipt stolen property offense under section 101(a)(43)(G) of the Act. Accordingly, the DHS's appeal will be dismissed.  The DHS has requested that we remand the record to enable new charges to be lodged.  Under the circumstances, we will grant the request.[13]  *See* 8 C.F.R. § 1003.30 (2017).

**ORDER:**  The appeal of the Department of Homeland Security is dismissed.

**FURTHER ORDER:**  The record is remanded for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

*DISSENTING OPINION:*  Garry D. Malphrus, Board Member

I cannot agree with the majority's conclusion that the respondent's receipt of stolen property offense does not qualify as an aggravated felony under section 101(a)(43)(G) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(G) (2012).  I agree that our task is to determine the generic, contemporary meaning of the phrase "receipt of stolen property" in section 101(a)(43)(G) by surveying the Federal and State statutes as they existed in

---

[12]  The DHS does not challenge the Immigration Judge's conclusion that the respondent's statute of conviction is indivisible with respect to whether an offender either knew or had reason to believe that the property received was stolen, and we agree with this conclusion. *See State v. Brown*, 296 N.W. 2d 501, 503 (S.D. 1980) (upholding an indictment that charged a defendant in the disjunctive with receiving property "he knows, *or* has reason to believe, has been stolen" (emphasis added)); *see also Matter of Chairez*, 27 I&N Dec. 21, 24 (BIA 2017) (holding that where "a prosecutor charges a defendant in the disjunctive . . . , that [is] 'as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt'" (quoting *Mathis v. United States*, 136 S. Ct. 2243, 2257 (2016))).

[13]  After the Immigration Judge issued her decision, the DHS filed motions to reopen and reconsider that were accompanied by a Form I-261 (Additional Charges of Removability) charging that the respondent is removable under section 237(a)(2)(A)(ii) of the Act, as an alien convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct, and section 237(a)(2)(B)(i) of the Act, as an alien convicted of an offense relating to a controlled substance.  However, the Immigration Judge did not rule on the motions before the appeal was taken.

1994, when Congress added the phrase "receipt of stolen property" to section 101(a)(43) of the Act, as well as the Model Penal Code. *See Taylor v. United States*, 495 U.S. 575, 592, 598 (1990); *see also Matter of Alvarado*, 26 I&N Dec. 895, 897 (BIA 2016). However, there was simply no consensus regarding the mens rea standard for receipt of stolen property offenses in 1994. I cannot conclude that Congress intended to adopt a mens rea that, according to the majority, would preclude offenses in 21 jurisdictions, as well as a Federal offense, from qualifying as aggravated felonies.

I agree with the majority that we should place particular importance on Federal law in arriving at our conclusion, but I believe doing so supports a contrary result because Federal law was not uniform in 1994 with respect to this issue. Rather, Congress employed both knowledge and reason to believe mens rea standards in Federal statutes criminalizing the receipt of stolen property. In this regard, Congress included a reason to believe standard in 18 U.S.C. § 922(j) (1994), which criminalizes the receipt or possession of a stolen firearm. Notably, this statute involves serious misconduct and carries a penalty of up to 10 years of imprisonment, making it one of the most strongly punished Federal crimes the majority cites. *See* 18 U.S.C. § 924(a)(2) (1994). Yet, under the majority's approach a conviction under 18 U.S.C. § 922(j) would not qualify as an aggravated felony receipt of stolen property offense. There is no reason to conclude that Congress intended such a result.

Moreover, some Federal statutes in the broader criminal context used a reason to believe (or an equivalent) mens rea standard in 1994. For instance, to obtain a conviction under 18 U.S.C. § 842(h) (1994), the Government was required to prove beyond a reasonable doubt that a defendant had received stolen explosive materials while "knowing or having reasonable cause to believe" that such materials had been stolen. *See also, e.g.*, 18 U.S.C. § 231(a)(2) (1994) (proscribing the transportation of firearms while "knowing or having reason to know" that the same will be used unlawfully); 21 U.S.C. § 841(d)(2) (1994) (criminalizing the possession or distribution of certain chemicals "knowing, or having reasonable cause to believe, that the . . . chemical will be used to manufacture a controlled substance").

When Congress enacted section 101(a)(43)(G) as part of the Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, § 222(a), 108 Stat. 4305, 4321 ("INTCA"), State offenses criminalizing the receipt of stolen property employed varying mental states. In attempting to categorize States' laws within respective mens rea categories, the majority's definition actually groups together two mental states, "knowledge" and "belief." Within the 29 States that encompass the majority's definition, 15 States used a "knowing" mens rea standard, while 14 States mirrored the language used by the Model Penal Code, which required that a violator

receive property knowing that it had been stolen, or believing that it had probably been stolen. However, 21 jurisdictions employed a reason to believe (or an equivalent) standard. Thus, there were different approaches among the States as to their general receipt of stolen property statutes.

Further, the statute in this case is not a general receipt of stolen property offense, but rather one punishing the receipt of a stolen motor vehicle. As the majority recognizes, some States used different mens rea standards with respect to statutes covering receipt of stolen vehicles. Specifically, most of the jurisdictions with separate statutes criminalizing the receipt of stolen motor vehicles that are cited by the majority utilized a "reason to believe" standard in those statutes. *See supra* notes 9–10.

Moreover, although this case involves extensive statutory surveys, the majority does not examine how each State applies its receipt of stolen property statutes in its case law. For example, although the text of act number 5/4-103 of chapter 625 of the Illinois Compiled Statutes required proof that a violator had "knowledge" that a motor vehicle had been stolen in 1994, Illinois courts had previously held that such "knowledge may be established by proof of circumstances that would cause a *reasonable person to believe* property had been stolen." *People v. Whitfield*, 573 N.E.2d 1267, 1272 (Ill. App. Ct. 1991) (emphasis added).

The majority recognizes that the "reason to believe" standard was not outside the mainstream in defining a receipt of stolen property offense in 1994. Our case does not involve a situation where a few States have adopted an outlier definition. There simply was no consensus among—or even within—the States or within the Federal criminal statutes as to the mens rea applicable to a receipt of stolen property offense. A primary purpose of the INTCA was to expand the classes of aliens deportable as aggravated felons. *See* H.R. Rep. No. 104-22, at 18 (1995). The prevalence of the "reason to believe" mens rea standard at the time connotes that Congress intended receipt of stolen property offenses committed with such a mental state to fall within the generic, contemporary meaning of the phrase "receipt of stolen property" under section 101(a)(43)(G) of the Act. *See Taylor*, 495 U.S. at 598; *see also Perrin v. United States*, 444 U.S. 37, 42 (1979).

I recognize that the United States Courts of Appeals for the Fifth and Ninth Circuits have addressed the issue in this case consistent with the result the majority reaches, but those circuits did not conduct a survey of Federal and State laws. For the benefit of the circuits that have yet to address this issue, I would conclude that a receipt of stolen property conviction in which the defendant knew, should have known, or had reason to believe that the property was stolen falls within the generic definition of an aggravated felony under section 101(a)(43)(G) of the Act. Accordingly, I respectfully dissent from the dismissal of the Department of Homeland Security's appeal.