**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1160
_____

WILSON EMILIO PEGUERO MATEO,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                        Respondent
_____

On Petition for Review of a Decision of
the Board of Immigration Appeals
(Agency Case No. A061-490-292)
Immigration Judge: Honorable Walter A. Durling
_____

Argued April 28, 2016
_____

Before: McKEE, JORDAN, and VANASKIE, *Circuit Judges*.

(Opinion Filed: September 6, 2017)


Tracey M. Hubbard, Esq. **(ARGUED)**

Bank Towers Building
321 Spruce Street
Suite 509
1500 Liberty Center
Scranton, PA 18503

      *Counsel for Petitioner*

Matthew A. Connelly, Esq. **(ARGUED)**
Thomas. W. Hussey, Esq.
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

      *Counsel for Respondent*

_____

O P I N I O N
_____


VANASKIE, *Circuit Judge.*

This appeal requires us to determine whether Wilson Emilio Peguero Mateo's conspiracy plea for Robbery of a Motor Vehicle under Pennsylvania law qualifies as a "crime of violence" under 18 U.S.C. § 16(b), as incorporated into 8 U.S.C. § 1101(a)(43)(F) of the Immigration and Nationality Act ("INA"). In light of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), and our decision in *Baptiste v. Attorney General*, 841 F.3d 601, 621 (3d

Cir. 2016), *petition for cert. filed* (U.S. Feb. 6, 2017) (No. 16-978), we hold that § 16(b), as incorporated into the INA, is unconstitutionally vague. We will therefore grant the Petition for Review, vacate the order of removal, and remand for further proceedings.

## I.

Mateo is a twenty-one-year-old native and citizen of the Dominican Republic who was admitted to the United States on August 11, 2010 as a lawful permanent resident. On June 17, 2013, he pleaded guilty to the felony charge of criminal conspiracy pursuant to 18 Pa. Cons. Stat. § 903. The underlying offense for his conspiracy plea was Robbery of a Motor Vehicle under Pennsylvania law, which dictates that "[a] person commits a felony of the first degree if he steals or takes a motor vehicle from another person in the presence of that person or any other person in lawful possession of the motor vehicle." 18 Pa. Cons. Stat. § 3702. On December 3, 2013, Mateo was convicted and sentenced to eleven to twenty-three months' confinement, and thirty-six months' probation.

On January 16, 2014, the United States Department of Homeland Security ("DHS") served Mateo with a Notice to Appear, charging Mateo as removable as an alien convicted of an aggravated felony pursuant to § 237(a)(2)(A) of the INA, 8 U.S.C. § 1227(a)(2)(A). Specifically, DHS stated that Mateo was subject to removal because his Robbery of a Motor Vehicle conviction constituted an aggravated felony under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), and was a "crime of violence" as defined in INA § 101(a)(43)(F), 8

3

U.S.C. § 1101(a)(43)(F).[1] To define a "crime of violence," the INA incorporates 18 U.S.C. § 16, which defines the phrase as follows:

> The term "crime of violence" means--
>
> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the

---

[1] Though not relevant to this case, the DHS also charged that Mateo was removable as an alien convicted of a crime involving moral turpitude pursuant to 8 U.S.C. § 1227(a)(2)(A). Specifically, the DHS stated that Mateo was subject to removal because his conviction also constituted a crime involving moral turpitude, pursuant to 8 U.S.C. § 1227(a)(2)(A)(i), because it was a crime of theft, as defined in 8 US.C. § 1101(a)(43)(G); and a crime of attempt or conspiracy to commit an aggravated felony, as defined in 8 U.S.C. § 1101(a)(43)(U).

course of committing the offense.

Mateo filed a Motion to Terminate Proceedings, challenging his removability on the ground that Robbery of a Motor Vehicle is not an aggravated felony because it is not a crime of violence as defined in § 16(b). The Immigration Judge ("IJ") disagreed, finding that Robbery of a Motor Vehicle is a crime of violence, and sustained the charge of removability based on Mateo's conspiracy conviction.[2]

Mateo appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). The BIA adopted and affirmed the IJ's decision with regard to Mateo's removability as an alien convicted of conspiracy to commit an aggravated felony that was deemed a crime of violence. The BIA did not address the remaining aspects of the IJ's decision and Mateo's appeal was dismissed. This Petition for Review ensued.

On appeal before this Court, Mateo initially argued that the BIA improperly determined, as a matter of law, that Robbery of a Motor Vehicle is a "crime of violence" under § 16(b), as incorporated into the INA. Accordingly, he requested that, per this Court's opinion in *Aguilar v. Attorney General of the United States*, 663 F.3d 692 (3d Cir. 2011), we find that the Robbery of a Motor Vehicle statute is "overly broad" and that, using the categorical approach, his conviction under the statute

_____

[2] The IJ dismissed the other charges with respect to crimes of theft because Mateo was only convicted of a conspiracy to commit Robbery of a Motor Vehicle; not the underlying offense itself. The IJ did not address the charge based on a conviction for a crime involving moral turpitude.

5

was not a crime of violence under the INA. The case was initially submitted on the briefs without argument.

Just before the case was submitted, however, the Government filed a letter pursuant to Federal Rule of Appellate Procedure 28(j) informing the Court that the Ninth Circuit, in *Dimaya v. Lynch*, 803 F.3d 1110 (2015), held that § 16(b), as incorporated into the INA, is unconstitutionally vague in light of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). Mateo then sent his own Rule 28(j) letter, arguing we should also find that § 16(b), as incorporated into the INA, is unconstitutionally vague. Thereafter, we ordered supplemental briefing and oral argument addressing whether the vagueness standard should be applied in the immigration context and, if so, whether § 16(b), as incorporated into the INA, is unconstitutionally vague given the Supreme Court's decision in *Johnson*.

Pending in our own Court at the time we heard oral argument in this matter was a petition for review in another deportation case, *Baptiste v. Attorney General*, No. 14-4476, which also presented the question of whether the definition of "crime of violence" in 18 U.S.C. § 16(b) is void for vagueness. We deferred reaching a decision in this matter pending a ruling in *Baptiste*. Separately, on September 29, 2016, certiorari was granted in *Dimaya*.[3] In light of this development, we opted to hold this matter C.A.V.[4]

---

[3] *Cert. granted*, 137 S. Ct. 31 (U.S. Sept. 29, 2016).

[4] C.A.V. is the abbreviation for the Latin legal phrase, *curia advisari vult*, meaning "the court will be advised, will

*Dimaya* was argued before the Supreme Court on January 17, 2017, and a ruling was expected by the end of June, 2017. Then, on June 26, 2017, the Court ordered that *Dimaya* be re-argued during the Court's October 2017 term. Given the further delay and the fact that this proceeding has been pending for a considerable period of time, we have chosen to decide Mateo's petition for review. In doing so, we must now follow our precedential holding in *Baptiste*, which on November 8, 2016, held that 18 U.S.C. § 16(b) is unconstitutionally vague when applied in a removal proceeding.[5] 841 F.3d 601, 621 (3d Cir. 2016).

## II.

The IJ had jurisdiction over Mateo's removal proceeding pursuant to 8 U.S.C. § 1229a. The BIA had jurisdiction to consider Mateo's appeal pursuant to 8 C.F.R. § 1003.1(b)(3). Pursuant to 8 U.S.C. § 1252(a), we have jurisdiction to consider "'questions of law raised upon a

consider, will deliberate." *In re Mystic Tank Lines Corp.*, 544 F.3d 524, 526 n.1 (3d Cir. 2008). It is the term we use when we hold an appeal in abeyance pending the outcome of another proceeding.

[5] *Baptiste* was not held C.A.V. pending the Court's ruling in *Dimaya* because the petitioner had also been found removable for having committed a crime involving moral turpitude, and thus was removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii). While the petitioner in *Baptiste* prevailed on the crime of violence issue, he ultimately lost on the crime involving moral turpitude issue and his petition for review was denied. 841 F.3d at 623.

petition for review,' including petitions for review of removal orders based on aggravated felony convictions." *Tran v. Gonzales*, 414 F.3d 464, 467 (3d Cir. 2005) (quoting 8 U.S.C. § 1252(a)(2)(D)). "Since the interpretation of criminal provisions 'is a task outside the BIA's special competence and congressional delegation . . . [and] very much a part of this Court's competence,' our review is *de novo*." *Aguilar*, 663 F.3d at 695 (quoting *Tran*, 414 F.3d at 467).

## III.

This appeal turns on the two questions we posed to the parties for supplemental briefing: (1) whether the constitutional vagueness standard should be applied in the civil/immigration context and, if so, (2) whether § 16(b), as incorporated into the INA, is unconstitutionally vague given the Supreme Court's decision in *Johnson*. The second question has been answered in the affirmative by *Baptiste*, and we are bound by that holding.[6] We now answer the first question in the affirmative as well.

## A.

The Supreme Court has explained that the "'void for vagueness' doctrine [is] applicable to civil as well as criminal

---

[6] Third Circuit Internal Operating Procedure 9.1 states that the holding of a panel in a precedential opinion is binding on subsequent panels. Court en banc consideration is required to overrule such a holding. *See United States v. Brownlee*, 454 F.3d 131, 149 (3d Cir. 2006).

8

actions." *Boutilier v. INS*, 387 U.S. 118, 123 (1967) (citation omitted). In *San Filippo v. Bongiovanni*, this Court noted that "[l]esser degrees of specificity are required to overcome a vagueness challenge in the civil context than in the criminal context . . . because the consequences in the criminal context are more severe." 961 F.2d 1125, 1135 (3d Cir. 1992) (citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99 (1982)). Because the consequences of deportation are likewise severe, we take this opportunity to clarify that the vagueness doctrine should be applied in the civil immigration context just as it is applied in the criminal context, and that lesser degrees of specificity are not sufficient to overcome a vagueness challenge.

Indeed, the Supreme Court invoked the vagueness doctrine in the immigration context in *Jordan v. De George* precisely because of the severity of deportation. 341 U.S. 223, 231 (1951) ("Despite the fact that this is not a criminal statute, we shall nevertheless examine the application of the vagueness doctrine to this case. We do this in view of the grave nature of deportation."). After the Supreme Court's decision in *Jordan*, the Court has since made it clear that "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993) (citing *Kaoru Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903)). And as Justice Thomas explained in *Johnson*, the Supreme Court has "become accustomed to using the Due Process Clauses to invalidate laws on the ground of 'vagueness,'" as the doctrine "is quite sweeping" where a statute "'authorizes or even encourages arbitrary and discriminatory enforcement.'" 135 S. Ct. at 2566 (Thomas, J., concurring in judgment) (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)).

Moreover, it is "'difficult' to divorce the penalty from the conviction in the deportation context." *Padilla v. Kentucky*, 559 U.S. 356, 365 (2010) (citations omitted). Accordingly, we hold that the vagueness doctrine may be used in the immigration context to challenge the INA's definition of a crime of violence. *Cf. Dimaya*, 803 F.3d at 1112–13; *Shuti v. Lynch*, 828 F.3d 440, 445 (6th Cir. 2016) ("The criminal versus civil distinction is . . . 'ill suited' to evaluating a vagueness challenge regarding the 'specific risk of deportation.'" (citing *Padilla*, 559 U.S. at 365–66)).

The Government nonetheless maintains that the vagueness doctrine should not be applied in the immigration context. Specifically, even though the Supreme Court invoked the vagueness doctrine in the immigration context in *Jordan*, the Government contends that the Supreme Court "did not squarely decide the extent to which the vagueness doctrine applies to the immigration laws." United States' Suppl. Letter Br. at 1 n.2. To make this point, the Government notes that other Supreme Court cases after *Jordan* have declined to extend Fifth Amendment limitations in some immigration contexts. *See id.* (citing *Galvan v. Press*, 347 U.S. 522, 530–31 (1954); *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–91 (1952); *Marcello v. Bonds*, 349 U.S. 302, 314 (1955)). The Government's concerns with respect to the application of the vagueness doctrine in the context of the deportation sanction, however, are misguided.

The Government's concerns fail to account for the central tenet of the vagueness doctrine: in this case, affording aliens "fair notice" of the possibility of removal to ensure the "even-handed administration of the law." *Papachristou v. City of Jacksonville*, 405 U.S. 156, 171 (1972). After all, the Supreme Court has explained that "accurate legal advice for

10

noncitizens accused of crimes has never been more important" because, "as a matter of federal law, deportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes." *Padilla*, 559 U.S. at 364 (footnote omitted). And even more recently, the Court has further stressed the need for "efficiency, fairness, and predictability in the administration of immigration law" in order to "enable[] aliens 'to anticipate the immigration consequences of guilty pleas in criminal court,' and to enter 'safe harbor' guilty pleas [that] do not expose the [alien defendant] to the risk of immigration sanctions." *Mellouli v. Lynch*, 135 S. Ct. 1980, 1987 (2015) (citations omitted).

Any semblance of predictability and fairness would be frustrated if we were to find that the crime of violence language in § 16(b) is subject to vagueness challenges outside of the immigration context, yet the same language is not subject to vagueness challenges when incorporated into an immigration statute. *Cf. Demore v. Kim*, 538 U.S. 510, 523 (2003) (explaining that it "is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings") (internal quotation marks omitted); *A.B. Small Co. v. Am. Sugar Ref. Co.*, 267 U.S. 233, 239 (1925) ("The ground or principle of the [vagueness] decisions was not such as to be applicable only to criminal prosecutions."). Accordingly, for the sake of predictability and fairness, we find that aliens should get fair notice of the possibility of removal based upon a conviction that the Government contends is for a crime of violence.

**B.**

Because we find that the vagueness doctrine may be used in the immigration context to challenge the INA's definition of a crime of violence, we must now determine whether § 16(b) is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson*, 135 S. Ct. 2556 (citation omitted). As noted above, we are bound by our precedential decision in *Baptiste*, which held that § 16(b) as applied in the immigration context is unconstitutionally vague and therefore invalid in light of *Johnson*. 841 F.3d at 615–21.

**1.**

In *Johnson*, the Supreme Court examined whether the residual clause of the Armed Career Criminal Act ("ACCA") was unconstitutionally vague. Where certain defendants have three or more prior convictions for a "violent felony," the ACCA provides a sentence enhancement. *Johnson*, 135 S. Ct. at 2555. "Violent felony" is defined as a crime that is "burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury." 18 U.S.C. § 924(e)(2)(B)(ii). The portion pertaining to a crime that "otherwise involves conduct that presents a serious potential risk of physical injury" is known as the residual clause.

Prior to *Johnson*, the ACCA required courts to use the categorical approach when deciding whether an offense fell within the residual clause. "Under the categorical approach, a court assesses whether a crime qualifies as a violent felony 'in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a

12

particular occasion.'"  *Johnson*, 135 S. Ct. at 2557 (quoting *Begay v. United States*, 553 U.S. 137, 141 (2008)).  Thus, determining "whether the residual clause covers a crime [] require[d] a court to picture the kind of conduct that the crime involves in 'the ordinary case,' and to judge whether that abstraction presents a serious potential risk of physical injury." *Id.* (quoting *James v. United States*, 550 U.S. 192, 194 (2007)).

The Supreme Court found that "[t]wo features of the residual clause conspire to make it unconstitutionally vague": the ordinary case inquiry and the serious potential risk inquiry. *Johnson*, 135 S. Ct. at 2557–58; *Baptiste*, 841 F.3d at 616.  The ordinary case inquiry, explained above, raised "grave uncertainty about how to estimate the risk posed by a crime." *Id.* at 2557.  Application of the categorical approach required the courts to conceptualize what the ordinary case of a crime might look like—which might involve many varying iterations—and the "residual clause offers no reliable way to choose between these competing accounts of what an 'ordinary' [crime] involves." *Id.* at 2558.  The serious potential risk inquiry was also troublesome because "the residual clause leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony."  *Id.*  The Court concluded that "[b]y combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates."  *Id.*

**2.**

The petitioner in *Baptiste*, like Mateo, faced removal on the basis of his purported status as an alien convicted of a crime of violence under § 16(b).  As stated previously, § 16(b)

defines a crime of violence as "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." In order to determine whether the crime of conviction is a crime of violence under § 16(b), courts utilize the same categorical approach that was applied to the ACCA's residual clause. *Baptiste*, 841 F.3d at 617.

The petitioner in *Baptiste* argued that the Supreme Court's holding in *Johnson* striking down the residual clause should apply to negate § 16(b). After comparing the features of the § 16(b) analysis to those found to contribute to the unconstitutionality of the residual clause in *Johnson*, we agreed that the same defects were present in § 16(b), rendering the provision unconstitutional. Regarding the first feature, we recognized that the same "ordinary case inquiry" is used when applying the categorical approach in both contexts. *Id.* Like the residual clause, § 16(b) "offers no reliable way to choose between . . . competing accounts of what" that "judge-imagined abstraction" of the crime involves. *Johnson*, 135 S.Ct. at 2558. Thus, we concluded in *Baptiste* that "the ordinary case inquiry is as indeterminate in the § 16(b) context as it was in the residual clause context." 841 F.3d at 617. Turning to the second feature—the risk inquiry—we observed that despite slight linguistic differences between the provisions, the same indeterminacy inherent in the residual clause was present in § 16(b). *Id.* "[B]ecause the two inquiries under the residual clause that the Supreme Court found to be indeterminate—the ordinary case inquiry and the serious potential risk inquiry—are materially the same as the inquiries under § 16(b)," we concluded that "§ 16(b) is

14

unconstitutionally vague." *Id.* at 621. This conclusion applies equally to Mateo's petition.

Our treatment of § 16(b) is in step with the Sixth, Ninth, and Eleventh Circuits, which have all similarly deemed the provision to be void for vagueness in immigration cases. *See Shuti*, 828 F.3d at 451; *Dimaya*, 803 F.3d at 1120; *Golicov v. Lynch*, 837 F.3d 1065, 1072 (10th Cir. 2016). The Seventh Circuit has also taken this position in the criminal context. *See United States v. Vivas-Ceja*, 808 F.3d 719, 723 (7th Cir. 2015). In fact, the only circuit that has broken stride is the Fifth Circuit.[7] *See United States v. Gonzalez-Longoria*, 831 F.3d 670, 677 (5th Cir. 2016) (en banc). In the meantime, we await the Supreme Court's decision in the appeal of *Dimaya*.

---

[7] We note that the Second, Sixth, Eighth, Eleventh, and D.C. Circuits have concluded that 18 U.S.C. § 924(c), which contains language nearly identical to § 16(b), survives *Johnson*. *See United States v. Hill*, 832 F.3d 135 (2d Cir. 2016); *United States v. Taylor*, 814 F.3d 340, 375–79 (6th Cir. 2016); *United States v. Prickett*, 839 F.3d 697 (8th Cir. 2016); *Ovalles v. United States*, 861 F.3d 1257, 1267 (11th Cir. 2017); *United States v. Eshetu*, 863 F.3d 946, 961 (D.C. Cir. 2017). But, as the Sixth Circuit recognized in reconciling its holding in *Shuti* that § 16(b) is void with its earlier decision in *Taylor*, "[u]nlike the ACCA and INA, which require a categorical approach to stale predicate convictions, 18 U.S.C. § 924(c) is a criminal offense that requires an ultimate determination of guilt beyond a reasonable doubt—by a jury, in the same proceeding." *Shuti*, 828 F.3d at 449. In short, reasonable minds can and do differ over how the Supreme Court's reasoning in *Johnson* applies in different contexts.

**IV.**

For the reasons discussed herein, we will grant the Petition for Review, vacate the order of removal, and remand for further proceedings consistent with this opinion.